The decision below is hereby signed. Dated:
December 6, 2006.

_____
S. Martin Teel, Jr.
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| In re | ) | |
| | ) | |
| JEANNE A. DUVALL, | ) | Case No. 04-01519 |
| | ) | (Chapter 7) |
| Debtor. | ) | |

MEMORANDUM DECISION REGARDING MOTION FOR RECONSIDERATION

On May 31, 2006, this court entered two orders (Docket Entry ("DE") Nos. 59-60) overruling the debtor's objections to proofs of claim filed by Sharon B. Watts and Kevin Bumbray (collectively the "Claimants") for amounts owed them, pursuant to a contract, calling for the debtor to pay each of them 14% of certain amounts that were otherwise distributable to the debtor as an inheritance from the estate of Henrietta Duvall, deceased (the "Duvall Estate").[1] This decision addresses a motion (DE No. 63) seeking reconsideration of those orders.

---

[1] The court's notes reflect that Henrietta Duvall retained her maiden name after the death of her husband, but the D.C. Superior Court referred to her as "Henrietta Duvall Bumbray." The court intends no slight to any of the parties in referring to Henrietta Duvall by her maiden name.

I

Henrietta Duvall was the mother to the debtor and step-mother to the Claimants.  The debtor was the personal representative of the Duvall Estate and its sole beneficiary.  She received certain amounts from the Duvall Estate and failed to pay any portion of those amounts to the Claimants.  The amounts distributed from the Duvall Estate derived from recoveries made by the Duvall Estate in enforcement of certain worker compensation annuity claims against Hartford Accident and Indemnity Company ("Hartford").[2]

In addition to the Claimants, the debtor had three other siblings.  In <u>Bumbray v. Duvall</u>, No. 02-CV-1263 (D.C. Sup. Ct.), one of the siblings, Elmer Bumbry, sued the debtor on his claim that pursuant to an oral agreement reached in 1997, he was entitled to receive a portion of any of the worker compensation annuity enforcement proceeds distributable to the debtor from the Duvall Estate.  The jury returned a verdict finding that Elmer Bumbry was entitled to 14% of such proceeds resulting from any

---

[2] In 1982, the Maryland Workers' Compensation Commission ("WCC") ordered Hartford to pay Henrietta Duvall a one-time lump sum payment of $18,500 and monthly payments of $1,200 for a period of twenty years.  When Henrietta Duvall died, Hartford ceased paying the monthly payment.  Elmer Bumbry persuaded the debtor as personal representative of the Duvall Estate to sue Hartford, and the WCC ordered Hartford to pay the Duvall Estate $1,200 per month dating back to the date of Henrietta Duvall's death and for the future duration of the 1982 order, plus a 40% penalty plus attorney fees to the attorney for the Duvall Estate. Reply to Opposition to Objection to Claim (DE No. 36) at 4.

judgment against Hartford, and that Jeanne Duvall was entitled to 16%.  On appeal, the Court of Appeals for the District of Columbia upheld the jury verdict in Elmer Bumbry's favor, concluding that the debtor had indeed agreed to pay Elmer Bumbry a portion of her expected distribution from the Duvall Estate.  However, the Superior Court did not adjudicate the rights of the Claimants here in the proceeds as they were not parties to that action.

This court heard evidence on the objections to the Claimants' claims and found that they were entitled to enforce the oral agreement Kevin Bumbry and the debtor had entered into and under which the debtor agreed that she would be entitled to 16% of all proceeds of the Duvall Estate's worker compensation claims enforcement recoveries that she inherited, with the remainder of the proceeds to be divided equally among the debtor's five siblings (a pro rata distribution of 14% per sibling).  The court thus concluded that each of the two Claimants involved here was entitled to a 14% interest in the Duvall Estate worker compensation enforcement recoveries distributable to the debtor from the Duvall Estate.  This disposed of all of the arguments the debtor had pressed in objecting to the claims, and the court thus held that the proofs of claim filed by the Claimants accurately reflected those interests, and the amounts owed them as a result of the debtor's

failure to pay over the 14% to which each of them was entitled. It overruled the debtor's objections to their claims on that basis.

Subsequent to the court's orders, the debtor filed her motion for reconsideration (DE No. 63), in which she indicated that a portion of the amounts owed the Duvall Estate was held in escrow as part of the interpleader stakeholder action captioned <u>Hartford Accident and Indemnity v. Bumbray</u>, Case No. CAE99-00071 (Md. Cir. Ct. (Prince George's County)).  Specifically, the debtor alleged that $19,200 in workers' compensation insurance owed to the Duvall Estate was placed in an escrow account maintained by Hartford's attorneys pending disposition of the interpleader suit.  DE No. 63 at 20.  The debtor also requested reconsideration with respect to the merits of the court's earlier decision and the amount of pre-judgment interest awarded to the Claimants.

In two orders entered on June 19 and July 24, 2006 (DE Nos. 66 and 70), the court denied the debtor's motion for reconsideration except with respect to the question of the $19,200 currently held in escrow, and the issue of pre-judgment interest.  On October 19, 2006, the parties presented evidence

4

and argument regarding the escrowed amount and interest owed.[3]

The court agrees with the debtor that because $19,200 of the debtor's estate was never released to the debtor, the debtor could not have any liability as any portion of those funds by refusing to distribute the portion of the funds owed to her siblings.  This will benefit the debtor in the short term because it reduces the amounts owed each of the Claimants, but in the long run it will benefit the Claimants because they will be entitled to their portions of the escrowed amounts in total once those funds are released rather than claims against the bankruptcy estate for such unpaid portions (claims entitling them to only a pro rata share of the bankruptcy estate's funds, if any, that will remain after payment of the administrative claims

---

[3] During the course of that hearing, the court explained at length that the $19,200 in escrow, like the rest of the proceeds from the Duvall Estate, must be distributed by the debtor according to the terms of the oral contract calling for each of the two Claimants here to receive 14%.  See Montana v. United States, 440 U.S. 147, 153 (1979) ("once an issue is actually and necessarily determined by a court of competent jurisdiction, that determination is conclusive in subsequent suits based on a different cause of action involving a party to the prior litigation").  The court suggested to the parties that they stipulate to a distribution of the escrowed amount according to those terms as part of the court's order on the debtor's motion for reconsideration, but the debtor declined the court's offer.

of the chapter 7 trustee and his law firm).[4]

## II

At the hearing of October 19, 2006, the debtor provided an affidavit for purposes establishing the amount and date of each payment the debtor received from Hartford, a predicate to calculating interest.  That affidavit showed that she received $203,760.00 from Hartford.  That $203,760.00 does not include the $19,200.00 that Hartford placed in escrow.  For reasons discussed in a prior order, the Claimants would be entitled under District of Columbia law to recover pre-judgment interest on their claims at 6% per annum, and, accordingly, as part of their allowed claims they are entitled to such pre-judgment interest to the petition date.[5]  The Claimants have prepared a calculation of interest to the petition date on the portion recoverable by each

---

[4] If the funds are released to the debtor, she will still be contractually required to pay each of her siblings 14% of the proceeds, leaving the debtor with only 16% of the proceeds.  To the extent that the debtor does not make such payment, her siblings will have causes of action against the debtor that, as postpetition claims, are unaffected by the debtor's bankruptcy discharge.  The oral agreement appears to have effected an assignment of 14% to each Claimant or created a trust in each Claimant's favor, such that the debtor would face potential criminal charges based on theft of property were she to dissipate the Claimants' 14% shares.  No matter what she does, the debtor cannot avoid the preclusive effects of this court's findings.

[5] Unmatured interest as of the petition date is not part of an allowed claim by virtue of 11 U.S.C. § 502(b)(2), but if a trustee's distribution pays allowed claims in full, then interest at the legal rate is paid on the allowed claims under 11 U.S.C. § 726(a)(5).

6

Claimant out of the $203,760 in payments the debtor received from Hartford, and the debtor has not challenged that calculation. Pursuant to that calculation, each Claimant is entitled to recover $11,230.34 in pre-judgment interest. To that must be added the principal amount recoverable, namely, 14% of the $203,760.00 received by the debtor, which equals $28,526.40.[6] Adding principal and interest together results in an allowed claim for each Claimant of $39,756.74 (versus the $46,973.10 claimed on each Claimant's proof of claim).[7]

### III

The Claimants' interest calculation submission notes their belief that $229,260.00 in payments were due from Hartford, and that the debtor has accounted for only $222,960.00 (consisting of the $203,760.00 she acknowledges she received plus the $19,200

---

[6] The debtor presented no evidence that there were any expenses of administration of the Duvall Estate that were incurred and paid and that reduced the inheritance amount of which 14% had been promised each of the Claimants.

[7] Each Claimant stated on the Claimant's proof of claim that $26,960.98 in principal was owed, but, as noted above, the debtor's own affidavit establishes amounts received from Hartford that result in $28,526.40 of principal being owed to each Claimant as the Claimant's 14% share of the recoveries. The reconsideration motion (DE No. 63 at 19) states that the Claimants represented that the $26,960.98 figure they used was the principal amount awarded Elmer Bumbry in the Superior Court. That figure would not have taken account of amounts paid by Hartford after the Superior Court action concluded. Even though principal was understated on each proof of claim, the much larger overstatement of prepetition interest on the proof of claim results in each Claimant's allowed claim being less than the $46,973.10 claimed to be owed on the proof of claim.

that Hartford's attorneys are holding in escrow), a shortfall of $6,500.00. They then state:

> Either (1) the Debtor has received payments for which she has not accounted in her Affidavit, or (2) the Hartford has not paid all the sums due and owing pursuant to the Workers' Compensation Commission award of August, 1997. To the extent that it is determined that Debtor in fact received more than she has acknowledged in her Affidavit, Claimants therefore reserve the right to submit a supplemental interest calculation based on the date(s) of receipt of the additional $6,500 or whatever portion thereof is determined to have actually been received by the Debtor.

To the extent that this is an invitation to the court to set a further hearing in this matter to ascertain what happened to the alleged $6,500 shortfall, and to determine whether that requires a re-calculation of the amounts owed the Claimants,[8] the court declines the invitation as it was not made pursuant to a motion to which the debtor would then have an opportunity to respond.[9]

---

[8] If the debtor received an additional $6,500 beyond the $203,760 she concedes having received, that would increase the principal amount owed the Claimants by $910 as well as affect the interest calculation. If any of the $6,500 was received by the debtor postpetition, however, that would give rise to a postpetition claim unaffected by the debtor's discharge, not an additional allowed claim against the bankruptcy estate.

[9] The court notes that the debtor's Reply to Opposition to Objection to Claim (DE No. 36) states that: "The Estate of Henrietta Duvall received the payments in arrears from The Hartford. Sixteen payments totaling $19,200.00 were never paid to the estate or to the Debtor. They belong to the Estate of Henrietta Duvall and are being held by The Hartford pending resolution of all claims." DE No. 36 at 4. The debtor appears to concede that whatever was owed by Hartford, other than the $19,200.00 in escrow, has been paid to her, but she has not conceded that $229,260.00 in payments was the total amount due from Hartford.

8

The proper course is for the court to enter an order adjudicating the controversy on the record before it.  If the Claimants have reason to seek modification of the order, they may file a motion.

IV

An order follows.

[Signed and dated above.]

Copies to: Debtor; debtor's attorneys; Jonathan S. Shurberg, Esq.; chapter 7 trustee; Office of the U.S. Trustee.